Carla B. Boone, Pro SE
C/O Kevin W. Newman, Business Manager     JUDGE SCHOFIELD
HOLLA'BACK RECORDS, ENT...LLC
P. O. BOX 970
TYRONE, GA  30290
E:mail kwnewman36@aol.com
Telephone: (404) 232-9852

# 15 CV 1391

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLA B. BOONE (MEMBER) ON BEHALF OF<br><br>HOLLA'BACK RECORDS,<br><br>ENTERTAINMENT...LLC,<br><br>       Plaintiff,<br><br>v. BRUNO F.CODISPOTI & ASSOCIATES,<br><br>STEVEN C.  MANCINELLI & ASSOCIATES,<br><br>DEFENDANTS | CASE NO.<br><br>COMPLAINT FOR FRAUD, CONSPIRACY AND<br>TO DECLARE SYSTEMIC COPYRIGHT<br>INFRINGMENT SUMMARY JUDGMENT<br>DISMISSALS UNCONSTITUTIONAL<br><br>JURY TRIAL DEMANDED |

    Plaintiff, Carla B. Boone, member of Holla'back Records, Ent. &

Management, LLC hereby alleges and files this complaint against Defendants

listed above and demands a trial by jury and seeks relief as follows:

I. **NATURE OF CASE**

1. This is a fraud, conspiracy and due process violations case wherein Plaintiff, as a layperson, was ignorant nor advised of the systemic, unjust, illegal, unethical and unfair Pro-Defendant biased,* statistically substantiated**, history of Summary Judgment dismissals in this circuit prior to or during her copyright infringement claim against John Jackson pka Fabolous ("Fabolous"), Pharrell Williams and his partner Chad Hugo ("The Neptunes") et. al. for Copyright and originally Trademark Infringement. Such systemic dismissals of copyright infringement claims have routinely denied Plaintiff (and virtually anyone filing similar copyright infringement claims against major corporations/superstars in this circuit),their Seventh Amendment, Constitutional right to an unbiased jury trial of their peers; instead being tried by opinions of judges contrary to specific, mandated Federal Rules of Civil Procedure—Summary Judgment rules and regulations. The unlawful, deliberate, intentional, misrepresentations/actions of all Defendants, with full knowledge of the ultimate results, benefitted all Defendants at the professional, emotional and financial expense of Plaintiff'. Many deliberate actions of "Codispoti" and "Mancinelli" were relied on by Plaintiff, clearly oppressive to Plaintiff's case, not in Plaintiff's best interest and assisted previous Defendants "Fabolous" and "The Neptunes" and their counsel in accomplishing the inevitable dismissal of Plaintiff's original

claims and avoiding liability for other causes of actions. Such
fraud and conspiracy was discovered during review of Original
Complaint and detailed bills/documents from Defendants Codispoti and
Mancinelli on February 11, 2015 and March 1, 2013 resulting from
Contractual Retainer Agreement for Representation of Holla'back
Records, Boone v. Jaackson et. al... (EXHIBIT A) and subsequent to
completion of the extensive researching/marketing of the documentary
"InJustice for All...Summary Mis Judgment."

2.From Sponge Bob Square Pants, to and including (but not limited
to) The Matrix, The Biggest Loser, Monster In Law, The Apprentice,
Drumline, Finding Nemo, Robots, Life, The Da Vinci Code, Bevis &
Butthead, The Equalizer, Don't Mess with the Zohan, Bringing Down
the House, Arli$$, Groundhog Day, My Name is Earl, Sweet Home
Alabama (a total of over 50+ multi-million/billion dollar projects
in the last 25 years), all of which were alleged to have been stolen
(federal copyright infringement claims bought in federal courts in
NY and CA and the lower courts within those circuits, against the
major networks/studios).

Yet, each and every one of the above multi-million/billion dollar
projects, and virtually all in the last 25 years, was dismissed on
Summary Judgment motions; essentially stating that NONE of those 50+
cases (in NY and CA and the lower Courts within those Circuits)*, in
the last 25 years, could have won. Such systemic dismissals have
denied tax-paying citizens their Constitutional, Seventh Amendment
right to due process before an *unbiased tribunal of their peers.*

By denying such citizens, including Plaintiff, their right to due process, the very courts placed in a position to serve its citizens have essentially done exactly the opposite. Plaintiff alleges that the courts have aided and abetted in the creation of a virtual monopoly within the movie, film, music/entertainment industry by essentially stipulating that NONE of these cases could have won (there were no material-important-fact issues in any of these cases); thus a trial, in every one of those cases, would have, essentially, been a waste of the court's time; since essentially 1960, yet statistically validated in NY & CA for last 25 years.

3. Is it reasonable, conceivable and least of all possible that over 96% of these cases could not have won if permitted to be presented before an unbiased jury of the Plaintiffs' peers as opposed to being tried by the subjective "Opinions" of Judges seated on these benches?

4. Plaintiff contends that actions, intentional revisions of the original complaint and conduct of Defendants Codispodti and Mancinelli (as original agents for Plaintiff) detailed below, are in direct violation of their roles, responsibilities and Model Rules of Professional Conduct in addition to substantive and procedural law. Additionally, the Courts dismissal was in direct conflict with the specific directives of the Federal Rules of Civil Procedure (56) (c) governing Summary Judgment which specifically stipulates that Summary Judgment is a disfavored remedy.  The statistics stipulated above clearly indicate systemic Pro Defendant favor, for at least

the last 25 years, in direct contradiction of such clear and specific Summary Judgment rules, directives, regulations and guidelines.

5. Plaintiff alleges that Defendants have knowingly participated/ engaged in deliberate, covert, wrongdoings and practices and additionally, intentionally, documented/omitted false/misleading representations and engaged in unethical and illegal practices and abuses of legal authority, conspiracy and fraud, to the benefit of Defendants and the detriment of Plaintiff by conspiring and fraudulently misrepresenting material facts to Plaintiff and the courts with the ultimate objective of continuing their unprecedented and previously unchallenged illegal, unjust and unethical Summary Judgment dismissals.

6. The statistically validated research (Item 2.) above by another officer of the court, esteemed Beverly Hills Attorney Steven T. Lowe,** documenting the blatant and one-sided, systemic, "Pro Defendant biased" dismissals have engulfed itself within the federal judicial system for at a minimum, the last 25 years. Such practices have denied Plaintiff (and other tax-paying citizens) their Constitutional, Seventh Amendment right to an _unbiased jury trial of their peers_ when they sue major corporations/superstars for infringing upon their rights to literally billions of dollars in Intellectual Property causing denial of due process, destruction of their small business, foreclosures on homes, destruction of families, suicidal thoughts, mental and physical issues when these

cases are, illegally dismissed despite material fact issues present in the majority of these cases. Such fraudulent actions upon the court have defiled the court when these copyright cases are filed against major networks/studios/corporations and have systemically prevented the judicial system from adjudicating these cases in a fair, unbiased and impartial manner.

7. Further, Plaintiff alleges that the systemic, Pro-Defendant biased dismissals have completely and totally ignored any and all specific, clear and concise Federal Rules of Civil Procedure, in addition to High Court's mandate (Exhibit B): "Copyright Cases Must Go to Jury."  In this ruling, the court said.. "the Constitution guarantees the right to a jury trial in all types of copyright infringement lawsuits….  The decision bars entertainment companies and other copyright holders from picking a trial by judge over a trial by jury."

Plaintiff alleges that major conglomerates/entertainment companies have been encouraged, aided and systemically abetted in their illegal, unjust and systemic dismissal of these cases by the systemic and unprecedented actions of these very courts and many attorneys of Artists suing these conglomerates such as Defendants noted above. Such systemic, unconstitutional, unethical and biased "trials by judge" have been documented and serve as one of the bases for Plaintiff's fraud and conspiracy charges hereby alleged against Defendants which assisted previous defendants John Jackson aka Fabolous, Pharrell Williams, Chad Hugo et. Al in getting the

original complaint for Trademark and Copyright Infringement unjustly dismissed.

8. Based upon what Plaintiff believes are illegal actions as well as the education, training and experience of each of the Defendants, such results, consistently obtained in this circuit when major corporations are sued for copyright infringement, was, known to all Defendants (including to Plaintiff's counsel) and unknown to Plaintiff leading to the fruitless and costly pursuit of a Jury Trial which, based on policies and practices of this court, were improbable at best and virtually impossible in reality.

**II. JURISDICTION AND VENUE**

9. This court is vested with jurisdiction of this case pursuant to 18 U.S.C. § 1001 (1) and (2), 18 U.S.C §371, 42 U.S.C § 1983 and 28 U.S.C §32 as controversy exceeds value of $75,000.

10. This court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338.

11. Venue is proper in this court pursuant to 28 U. S. C § 1391.

**III. THE PARTIES**

12. PLAINTIFF Carla B. Boone ("Boone") is a resident of the State of Georgia and is a member of Holla'back Records, Entertainment and Management, South LLC a Georgia Limited Liability Company (on behalf of which such lawsuit is filed) originally formed and operated in New York with offices at 1007 President Street, Suite 1, Brooklyn, New York 11225.

13. Plaintiff Boone/Holla'back Records are in the business of producing, promoting, recording/managing/consulting musical artists, including but not limited to musical and recording artists in the hip hop and rap genre.

14. In 1998 and prior to the establishment of Holla'back Records as a limited liability company in the state of New York, Boone conducted business as a sole proprietor under the name Holla'Back Records.

15. In May 2001, Boone established Holla'back Records as an independent recording label.

16. Plaintiff Boone is the owner of the copyrighted song that was previously subject of the original infringement claim in addition to the Federal Trademark of her company's name.  Thus standing to commence that action, at that time, was proper pursuant to 17 U.S.C § 501(b).

### Defendants Codispoti and Associates LLP.

17. For approximately 10 years 3 months, Codispoti and Mancinelli were originally formed and operated as a Limited Liability Partnership.

18. Their original and principal place of business, for 10 years 3 months, was 111 John Street, New York, New York.

19. Since early 2009 (specifically December 24, 2008 and January 8, 2009 respectively) Defendants (in addition to previous counsel for original Defendants in Boone vs. Jackson et. Al., (Cynthia Arato,

Esq.) each now conveniently owns their individual Domestic Business

Corporation/Domestic Limited Liability Companies/private practices.

20. Each Domestic Business Partnership of Defendant (Codispoti and

Associates and Mancinelli and Associates) still maintains the exact

same physical residence of 111 John Street, New York, NY despite

dissolving their partnership and each individually seeking separate

Business Corporations.

### Defendants Mancinelli and Associates, LLP.

21. For approximately 10 years 3 months, Codispoti and Mancinelli

were originally formed and operated as a Limited Liability

Partnership.

22. Their original and principal place of business, for 10 years  3

months, was 111 John Street, New York, New York.

Since early 2009 (specifically December 24, 2008 and January 8,

2009 respectively) Defendants (in addition to previous counsel for

original Defendants in Boone vs. Jackson et. Al., (Cynthia Arato,

Esq.) each now conveniently owns their individual Domestic Business

Corporation/Domestic Limited Liability Companies/private practices.

### FACTS:(FIRST CAUSE OF ACTION): FRAUD

23. Plaintiff refers to and incorporates herein the General

Allegations stated in Paragraphs 1 through 22 alleged herein above

and makes them part hereof as though set forth in length.

24. At the time the original copyright infringement lawsuit was

filed, Defendants Codispoti and Mancinelli owned a Limited

Liability Partnership and promoted themselves to the public as

skilled and experienced attorneys specializing in copyright and trademark infringement.

25. Defendants Codispoti and Mancinelli prepared a detailed and specific Retainer Agreement Terms and Conditions on July 2, 2003 (Exhibit A). This retainer agreement specifically stated in "Item 2" Attorney's Fees that Plaintiff agrees to pay Attorney an "hourly rate" for all services rendered… a total retainer of $7500..agreeing to replenish retainer when deposits are reduced to $2500 or less… "

26. Plaintiff retained Defendants Codispoti and Mancinelli to file Copyright and Trademark infringement charges against rap superstars and Defendants Fabolous (John D. Jackson), Pharrell Williams & Chad Hugo (The Neptunes) and their recording/distribution companies (Desert Storm, Elektra Entertainment Group, Inc., Desert Storm Records, Blackwood Music Publishing, Inc. and WEA (Warner Music Group, Inc.

27. Plaintiff signed such specific Retainer agreement and paid an initial lump sum of $7500 and agreed to replenish such as deposit reduced to $2500 or less. Plaintiff made all payments to Defendants promptly when each payment was due.

28. Despite significant material fact issues and subsequent to what Plaintiff believes was an illegal, unethical and inappropriate dismissal of the copyright infringement claim, Boone was advised by Defendants to "go on with your life."

29.  She was then required to file a Pro Se Appeal since Defendants were going to charge an additional $30,000 (after paying an approximate total of $100,000 and knowing that Plaintiff had reached her cap on affordability of attorney fees).

30. This advice to go on with her life was, curiously, proffered despite Defendants specifically detailing and agreeing to significant legal errors which were made in the District Courts' original opinion dismissing the case.

31. The Court of Appeals subsequently agreed that numerous legal errors were made yet, had to continue the systemic dismissals of these cases despite material fact issues clearly existing and their very, documented and detailed admission of the legal errors made by Judge George Daniels.

32. Such admitted legal errors by the Appeals Court should have, immediately, justifiably warranted remand to the district, yet, instead, the Appeals Court affirmed an admitted, legally flawed, original opinion and affirmed Defendants' Summary Judgment motion.

33. Subsequent to such shocking dismissal, Plaintiff researched and divulged numerous allegations of similar Summary Judgment dismissals, illicit attorney misconduct and other judicial questionable actions/dismissals when Independent/Artists file copyright infringement claims against major corporations/national superstars etc.

34.  Plaintiff became well versed in copyright infringement law in addition to the Summary Judgment process specifically.

35. One of several pieces divulged by Plaintiff was research done by an esteemed Beverly Hills Attorney with over 25 years of litigation experience and 5 years with Super Lawyer Status, Steven T. Lowe, who wrote several articles prophesying the "Death of Copyright." Attorney Lowe stipulated and statistically verified that, in the last 25 years, in New York (the Court Plaintiff originally filed her copyright suit) and California, and the lower courts within those circuits), such Copyright Infringement cases virtually never go to trial. In fact, Attorney Lowe's initial findings stipulated that 46/48 cases (96%) in a 20 year period never went to trial and in the next 5 years, the networks/studios were the victors each time.

36.  "In his dissent to the Ninth Circuit's 1993 decision in White v. Samsung Electronics America, now-Chief Justice Alex Kozinski famously remarked that, "for better or worse, we are the Court of Appeals for the Hollywood Circuit." This oft-quoted observation neatly encapsulates the problem that author-plaintiff s face in litigating against studios for the misappropriation of their creative works; the law simply has become too friendly to Hollywood interests, often at the expense of doctrinal clarity and equitable balance."

37. As Defendants Warner, Electra & Atlantic (WEA aka The Big Three)were one of if not the most prominent, major music players in the Hollywood realm or perhaps worldwide, Defendants Codispoti and Mancinelli, throughout their many years in this profession, including but not limited to their specific research and experience,

knew and should have communicated that the only guarantee that

existed both then and now was the impossibility of reaching a "Jury

Trial" as they so clearly demanded on behalf of Plaintiff in the

original and Amended complaints (Exhibit C).

38. Additionally, despite Defendants Codispoti and Mancinelli

clearly notating that research had been done very early in

litigation (complete research regarding: rap and hip-hop copyright

infringement actions in Second Circuit 11/04/03 in addition to

"Research regarding copyright infringement actions in the Second

Circuit, proof and damages"12/19/03 and 2/26/03-Exhibit D) which

would have clearly divulged this reality (assuming arguendo that

such "experts" were unaware of such), Plaintiff alleges that

Defendants intentionally, knowingly concealed, misrepresented,

withheld/omitted these material specific and essential facts from

Plaintiff who falsely was led to believe that a Jury Trial would

occur.

39. In fact, Plaintiff was led to belief that she had "a good

chance" of defeating this unavoidable Summary Judgment dismissal

even as late as 1/23/05 by e:mail (Exhibit E) despite such early

research (in addition to their experience in this field) clearly

suggesting that the majority of these cases are either virtually

always dismissed on Summary Judgment Motions or the major

corporations are unanimously the victors in this circuit; a fact

never divulged to Plaintiff subsequent to such research and prior to

defrauding Plaintiff out of at least $100,000 in attorney/expert fees.

40. Plaintiff in boxed Defendant Mancinelli in LinkdN on March 1 2013 (Exhibit F) (the initial point that such intentional fraud was revealed to Plaintiff) and inquired as to why such information and research stipulated in item 6 had not been divulged to client. Defendant Mancinelli stated that I needed to speak with Defendant Codispoti as "you were really his client."

41. Plaintiff immediately called Defendant Codispoti and discussed Attorney Lowe's research. Defendant Codispoti stated that these stats did not take into account any settlements made to Plaintiffs during this approximate 25 year period. Plaintiff asked Defendant Codispoti not to insult her intelligence as there would be little to no reason for any major network/studio to settle with essentially 100% odds of beating the case on Summary Judgment Motions.

42. Plaintiff requested that Defendant forward the specific Summary Judgment research done on her specific case on to her attention.

43. Defendant initially stated that case was old and attempted to deny such request.

Defendant was advised that he was required to maintain files for 7 years and only 6 had passed.

44. Defendant has yet to forward such information to Plaintiff's attention.

45. Additional nuanced and detailed legal information unavailable to laymen such as Plaintiff and only divulged to Plaintiff during her

research in preparation for release and distribution of the
documentary "InJustice for All…Summary MisJudgment" divulged the
fact that Summary Judgment would have been strictly prohibited in
cases where a breach of implied in fact contract occurred.

46. Defendants omitted Lightyear Entertainment, the Trademark
Infringement Claims and the Lanham Act causes of actions from
original drafts/Complaints.

47. Plaintiff believes that Defendants intentionally, knowingly,
purposefully and wrongfully filed an "Amended" Complaint-(Exhibit C)
which Plaintiff alleges purposely excluded LightYear Entertainment
in addition to the Trademark Infringement and Lanham Act claims; a
critical Defendant and causes of action in the original filing.

48. LightYear gained direct access to Plaintiff's Independent
release, proclaimed the song as a "hit" and discussed the
possibility of Plaintiff receiving $500,000 for the "hit" song
Holla'back as communicated to Plaintiff during her meetings with the
A&R Executive, Greg Riles, his Assistant Moses Edwards during lunch.
Later that afternoon, Plaintiff was introduced to the President,
Arnie Holland, who commented that Plaintiff had some "great stuff."

49.Based on the expertise and experience of Defendants and the
entire communication to them regarding the specific meeting
Plaintiff had with these original Defendants (as noted on 11/4/03
and research which linked Da White Boy with Fabolous-Exhibit D (2)
Lightyear) in addition to a letter, Defendants requested from an

independent party, Tamara Ramsey, who accompanied Plaintiff to said original meeting with Lightyear Entertainment (Exhibit G).

50. Plaintiff believes that Defendants had absolutely no reason to Amend the original complaint and omit this critical Defendant, in addition to the Trademark and Lanham claims from original complaint unless there was some illicit reason for their doing so.

51. It is Plaintiff's understanding that if such breach of implied contract clause against LightYear and the Trademark infringement claim remained in the original claim and not intentionally annexed from the original complaint, along with the Federal Trademark Infringement claim and Lanham Act claims, Plaintiff would have defeated the Summary Judgment Motion at least for Lightyear and the Trademark Infringement claims against remaining Defendants for infringing on the Holla'back Federal Trademark.

52. Further, the Defendants' infringement of the rap utterance of the Trademarked rap word "Hollaback" repeatedly uttered by Defendants could not have been part of such dismissal as it was a separate and specific cause of action and claim.

53. Eliminating such Cause of Action from original Complaint has cost Plaintiff millions in potential Trademark infringement fees as the statue of limitation has now expired and the majority of earnings due to the infringement has fallen outside of the Statute of Limitations.

54. Finally, despite an hourly retainer arrangement, Defendant Mancinelli called Plaintiff to advise her that the Summary Judgment